**UNITED STATES of America,
Plaintiff and Respondent,**

**v.**

**Jerome BYRNES, Defendant and
Petitioner.**

**No. 30763–CD.**

United States District Court
C. D. California.

Nov. 6, 1967.

Wm. Matthew Byrne, Jr., U. S. Atty., and Robert L. Brosio and Gerald F. Uelmen, Asst. U. S. Attys., Los Angeles, Cal., for the Government.

Jerome Byrnes, in pro. per.

## MEMORANDUM OPINION AND ORDER

CRARY, District Judge.

The within motion seeks an order vacating the sentence in the action, imposed February 25, 1963, following verdict of guilty. The petitioner is the defendant in the criminal proceedings and his "motion" herein will hereafter be referred to as "petition."

The sentence involved has been served and the petitioner now asks the vacation thereof under the provisions of Rule 35 of the Federal Rules of Criminal Procedure or by way of a Writ of Error Coram Nobis under authority of the "All Writs Statute", 28 U.S.C. § 1651(a).

In his petition to vacate the sentence, petitioner asserts that on August 1, 1967, he received an anonymous letter entitled "AN OPEN APOLOGY", and that attached thereto was the title page and pages 287–295, inclusive, of a book entitled "Inside the F.B.I.", authored by Norman Ollestad. (The letter and excerpt from the book appear as Exhibit A to the petition.)

It appears the book was copyrighted in 1967. On page 295 the author states, with respect to some discussion, apparently by F.B.I. personnel, relative to investigation of the letter appearing on page 293:

> " 'Listen, Wright, don't push it. Our squad leader already has had a heart attack over this. Literally had an attack. That's why he's been off since last week. Besides, you're in this pretty deep too.' Bernie furrowed his brow, trying to threaten the young man.
>
> " 'I'm not worried, Bernie, I didn't lie in court.'
>
> "But after that slight skirmish they came to terms. They agreed to cover up the investigation of any possible perjury by one of their fellow F.B.I. agents because it would only have led to their own punishment by the Director, and as they knew so well, Hernstein was guilty anyway so they figured he might as well do his time in prison for attempting the bribe."

The Government now moves to dismiss the petition. Petitioner Byrnes, in his opposition to the Government's motion to dismiss, asserts (beginning line 19, page 4) he is not seeking to present new evidence concerning William Simon's tes-

timony at the trial and to re-litigate issues decided by the Court on petitioner's previous motion for new trial (heard February 15 and 19, 1965) based on alleged perjury of F.B.I. Agent Simon as assertedly disclosed by the letter on page 293 of the book. The letter, as it appears in the book, refers to one "Hernstein" whereas in the photocopy of a letter considered at the hearing on the motion for new trial the name was Jerome Byrnes.

At page 4, line 28, of his points and authorities in support of his opposition to the motion to dismiss, petitioner states: "The issue at hand is not with Simon's perjured testimony but with the *extraordinary* revelations of admitted misconduct on the part of the U. S. Attorney's office."

The petitioner contends that, as Assistant United States Attorney, Ollestad had knowledge of a " * * * conspiracy to wrongfully deprive petitioner of a fair trial * * * " (line 12, page 5), which he withheld from the Court and the defense at the time of trial, that petitioner was denied his constitutional rights to a fair trial, and that consequently the sentence is illegal.

At page 5, line 31, of the points and authorities to his opposition, petitioner says: "Petitioner again reiterates that the petition is based on the newly discovered *"misconduct"* of the U. S. Attorney's office which substantially and prejudicially deprived Petitioner of a fair trial." Mr. Ollestad, at page 287 of his book, relates that the F.B.I. began an investigation on information that a Federal Agent of the United States Treasury Department, Internal Revenue Service, Alcohol and Tobacco Tax Division, was soliciting a bribe from a man suspected of violating the Federal firearms statute. From pages 287 to 295 he purports to relate in story form what went on in the F.B.I. relative to the case, from the initiating of the investigation to and including matters occurring long after the last trial of the defendant Byrnes (January, 1963) and after the motion for new trial (February, 1965). Ollestad sets forth in quotation marks the alleged

statements of certain persons as having been made during the activities of various members of the F.B.I. in connection with the Byrnes case. As will be noted from review of the testimony at the hearing on the Government's motion to dismiss the instant petition for relief, *infra,* nearly all of the statements by Ollestad on pages 287 to 295, inclusive, of his book are hearsay. Ollestad took no part in the investigation or arrest of defendant Byrnes or in any of the trials or motion for new trial. In his book he is relating the purported actions and dialogue of members of the F.B.I. *other than himself* during the investigation, trial and thereafter. He prefaced his remarks, set forth at pages 287 to 295, by saying he suspected that fudging on one's testimony on one's oath in the Federal Court often happened " * * * but the only incident that I really knew of occurred in another jurisdiction at another time and I wasn't directly involved."

The evidence offered by petitioner in support of his petition is, in substance, a statement by Ollestad that he heard of alleged perjury by an F.B.I. Agent in the giving of testimony at petitioner's trials which fact he did not disclose to the defense or the Court and that persons in the F.B.I. agreed to "cover up" investigation of any possible perjury by one of their fellow F.B.I. Agents.

If Mr. Ollestad is guilty of misprision of a felony, as charged by the petitioner, by failing to disclose his knowledge of a conspiracy to not reveal or to "cover up" alleged perjured testimony, or an investigation thereof, that is a matter for consideration of the United States Attorney on proper complaint and investigation and is not grounds for a Writ of Error Coram Nobis. If Ollestad had reported the information petitioner says he had relative to the alleged conspiracy, it would have been the same as that considered by the Court in petitioner's motion for a new trial, to wit, the alleged perjury of F.B.I. Agent Simon in his testimony at the trials of the petitioner. Evidence on this issue was heard in de-

tail at the hearing of petitioner's motion for new trial in February, 1965.

Mr. Ollestad was subpoenaed and testified in connection with the within hearing of the Government's motion to dismiss the petition herein. He stated that he was the author of the book, "Inside the F.B.I.", that he was an F.B.I. Agent from about September, 1960, to September, 1961, and an Assistant United States Attorney from about November, 1961, to November, 1963. He further testified that the portion of the book, pages 287 to 295 (Ex. A to petition), was based entirely on hearsay except for the testimony of Agent Simon, the "squad leader", at the trial, pages 291–92, and the alleged letter, page 293, which was involved in defendant Byrnes' motion for new trial heard February 15 and 19, 1965. He further stated that the words set forth in quotation marks were not intended as statements made as quoted by the persons indicated, some of whom were fictitious, but were his (Ollestad's) way of relating what he concluded from the hearsay statements he had heard made by F.B.I. and Treasury Agents. He observed that in his opinion these statements, which he heard commencing about one month after Byrnes' third trial in January, 1963, were supported by his check of the file, transcript, and so forth, he made in 1965, as discussed hereinafter. He could not give the names of any of these Agents but testified that they had been in his office from time to time in the Federal Building, Los Angeles, when he was an assistant United States Attorney, relative to cases other than the one involving petitioner Byrnes. He was unable to recall whether any of these Agents were F.B.I Agents who had worked on the Byrnes case or were present at Tallmadge's home on the day of Byrnes' arrest. The conversations, during which the alleged statements were made, started about one month after the completion of the last trial of defendant Byrnes and occurred over a period of several weeks thereafter. The comments were made sometimes in conversation with Ollestad and sometimes in conversation between Agents which he overheard. He testified he paid little attention to the statements at the time they were made because he thought they were by disgruntled Treasury Agents from the Alcohol and Tobacco Tax Division and F.B.I. Agents complaining about their Director, and he did not give the remarks any credence until sometime in 1965 when the letter (page 293) came to his attention and he examined the Court files in the Byrnes case and a portion of the transcript on appeal in that case. He testified he then for the first time, concluded that in his opinion F.B.I. Agent Simon had given false testimony at the trials in that he testified to certain statements he said he heard when he had his ear to the door of the bathroom in which Tallmadge and Byrnes were conversing on the day of Byrnes' arrest, whereas he (Ollestad) had concluded that Agent Simon " * * * hadn't heard any conversation at all." (Page 292.)

The alleged letter (page 293), referred to above, as marked for identification and discussed in detail during the hearing on defendant Byrnes' motion for new trial, was a non-authenticated, reduced in size, photostatic copy of a letter purportedly from Francis X. Gilmore, deceased supervisor in Charge of the Alcohol and Tobacco Tax Division in Los Angeles, to an unidentified addressee. The photocopy of the letter was received by defendant Byrnes' attorney, Marcia King, on June 12, 1964. The envelope was postmarked June 11th, San Francisco, and bore no return address or sender's identity. The motion for new trial was filed February 4, 1965.

In his book, Ollestad relates that the squad leader, who he identifies as Agent Simon, testified at the trial substantially as follows:

"'I put my ear up to the door and first I heard a voice, which I recognized to be that of the victim, as saying, "I tried, I tried. I couldn't get it in five days. Sometimes it takes longer." And then I lifted my head from the door to look at my associates and when I put my ear back to the door

I heard the victim continuing: "It takes seven days." It appeared to me that I had missed several words during that second or two, whatever it was.'

"The FBI man was cool. It took a lot of nerve to testify as he did because he hadn't heard *any* conversation at all.

"The jury stirred almost imperceptibly. They felt the witness was going overboard to be fair, as he continued.

" ' "It takes seven days. I'll get the money. I told them that I would put up my boat for collateral." At this point another male voice cut in firmly and said, "Do you know what a strain this is, going through something like this? You promised you'd have it." '

"The prosecutor interrupted again, 'Did there come a time * * *,' but the FBI man wasn't finished with Hernstein yet. He delivered the coup de grace with a sharp nod of his head in the defendant's direction.

" 'At this point I opened the door and the man in the room with the victim was placed under arrest.' " (Pages 291–92.)

Mr. Ollestad further testified that after reading the photocopy of the letter referred to above and the file and parts of the transcript in the case, he was of the opinion that Agent Simon had not heard any of the conversation between Tallmadge and Byrnes in the bathroom, as he states on page 292 of the book.

The letter appearing on page 293 of the book, Ollestad stated, was not identical to the alleged letter on which defendant Byrnes based his motion for new trial in that he did not include the names of Agent Simon and the witness Tallmadge or the true name of Byrnes. This letter, he stated, first came to his attention sometime after the hearing of the motion for new trial in 1965. It should be noted that an appeal was taken from the Order denying the motion of defendant Byrnes for new trial, based on the photocopy of the said letter as newly discovered evidence, and the Order was affirmed by the Court of Appeals on August 9, 1965, in Byrnes v. United States, 348 F.2d 918 (9 C.A.).

In writing the portion of his book here involved, Mr. Ollestad stated, he at no time talked to anyone in the United States Attorney's office or Mr. Simon to check or verify what he said in the book. Several of the statements on pages 287–295 do not conform to the true facts because he did not want to have his narrative the same in all respects to the Byrnes case.

While an Assistant United States Attorney, Ollestad was, in February or March, 1963, assigned the case involving the witness Tallmadge which concerned alleged unlawful possession by Tallmadge of certain firearms. On March 7, 1963, Ollestad recommended against prosecution. It was ultimately determined sometime after the Byrnes trials that Tallmadge would not be prosecuted. (Affidavit of Thos. R. Sheridan)

Mr. Ollestad testified he had no intention of writing the book, "Inside the F.B.I.", which was published in 1967, when he was in the United States Attorney's office and did not start working on the book until 1964. He testified he had never stated that he had firsthand knowledge of the material on pages 287 to 295, which involved the Byrnes case.

The statement he made on the Louis Lomax show in August, 1967, to the effect that an F.B.I. Agent had committed perjury at petitioner's trials, was only his personal opinion arrived at as hereinabove noted. The statement he made on the Joe Pyne show on or about June 27, 1967, in substance, that everything in his book was fact, he said was, insofar as concerned the contents of pages 287 to 295, based on his conclusions as to what he believed the facts to be after considering the hearsay statements referred to above, including conversations he had with defendant Byrnes' attorneys, the files in the case, portions of the transcript relating to the testimony of defendant Byrnes and Agent Simon, and the letter referred to above.

On October 4, 1967, petitioner conferred with Mr. Ollestad at his, Ollestad's, office relative to obtaining an affidavit. Ollestad testified he had at that time stated in jest that he might be "cut up" if he gave Byrnes an affidavit but that he did not say he might be disbarred or prosecuted. Mr. Ollestad also testified, in confirmation of his affidavit filed October 23, 1967, that in his comments on the Byrnes case (pages 287–295) he did not mean to state or infer that the Assistant United States Attorney prosecuting the Byrnes trial knew of any perjured testimony by any witness in that trial either before or after same and that he had no information in his notes or memory that the Assistant United States Attorney prosecuting the case knew of any false or perjured testimony at the trial either before or after the trial was completed. Mr. Ollestad also testified that he did not think there was any perjury or false testimony in the Byrnes trial during the time he was an Assistant United States Attorney. In 1965 he said he concluded that the letter (page 293) was authentic and that the Government should have done more to determine its authenticity. He arrived at this conclusion, however, without reading the transcript of hearings on defendant Byrnes' motion for new trial.

To justify the issuing of a Writ of Error Coram Nobis, the petitioner must make a showing so strong that action to achieve justice is compelled. See United States v. Morgan, 346 U.S. 502 at 506–511, 74 S.Ct. 247, 98 L.Ed. 248 (1953), for a discussion of the Writ and attendant problems. At page 511 of the Morgan case, supra, 74 S.Ct. at page 252, the Court says:

"Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice."

and on page 512, 74 S.Ct. on page 253:

"In the *Mayer* case [United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129] this Court said that *coram nobis* included errors 'of the most fundamental character.'"

The Court of Appeals, District of Columbia, in Moon v. United States, 106 U.S.App.D.C. 301, at 303–304, 272 F.2d 530 at 532–533, affirmed the District Court's denial of a petition for a Writ of Error Coram Nobis on the ground that the litigant failed to

"* * * present a case so strong that 'action to achieve justice' is compelled"

and that the claimed errors did

"* * * not show a lack of fair trial for the sort of miscarriage of justice which might call for immediate relief."

The Writ will not lie to correct an error of law, Bateman v. United States, 277 F.2d 65 at 68 (8 C.A.1960).

In Tinkoff v. United States, 129 F.2d 21 (7 C.A.1942), a Writ of Error Coram Nobis was sought on the grounds the petitioner had been convicted on perjured testimony resulting from a conspiracy between Government officials and a co-defendant who testified on behalf of the Government. The Court noted that the petitioner was not entitled to the granting of his motion as a matter of right, stating:

"We are charged with the responsibility of determining whether he has made a showing which would justify its allowance." (Page 23.)

In holding that no such showing was made, the Court says:

"As already stated, no supporting affidavits are presented and there is no disclosure as to how or by whom he could hope to prove the essential allegations of his petition." (Page 23.)

At page 22 of the opinion the Court cites Hysler v. State of Florida, 315 U.S. 411, 62 S.Ct. 688, 691, 86 L.Ed. 932 (March 2, 1942), where Writ of Error Coram Nobis was sought in a case wherein conviction was obtained

" * * * upon perjured testimony given as a result of connivance with the prosecuting officials."

The Supreme Court of Florida sustained the petitioner's conviction and twice denied application for review. (Page 22.) The Supreme Court of the United States sustained the action of the Florida Supreme Court, stating:

" * * * A petitioner must 'make a full disclosure of the specific facts relied on,' and not merely his conclusions 'as to the nature and effect of such facts.' The proof must enable the appellate court to 'ascertain whether, under settled principles pertaining to such writ, the facts alleged would afford, at least prima facie just ground for an application to the lower court for a writ of error coram nobis.' * * * "

For a discussion of coram nobis by the Court of Appeals, 8th Circuit, see Deckard v. United States, 381 F.2d 77 (1967), at pages 78–79.

The Court concludes the petitioner has adequately presented a petition in the nature of a Writ of Error Coram Nobis. The question then to be determined is whether the case presented by the petitioner herein is so strong that action to achieve justice is compelled.

By motion to dismiss, the respondent United States asserts that the sentence of petitioner was not illegal within Rule 35, Federal Rules of Criminal Procedure, and that if the petition be deemed one for Writ of Error Coram Nobis the petitioner presents no substantive grounds upon which relief may be granted.

After full consideration of the evidence, as outlined above, and for the reasons heretofore stated, the Court concludes that if Mr. Ollestad did commit an offense by failing to disclose to the United States Attorney or the defense or the Court, the hearsay statements to which he said he paid little attention at the time they were made, such failure does not constitute grounds for the Writ of Error Coram Nobis sought, and that although it appears petitioner first learned of Ollestad's "story" (pages 287–295) in 1967, the issue of whether Agent Simon gave false testimony at the trials of petitioner was heard at length as a part of petitioner's motion for new trial, referred to above, which motion was based on the newly discovered evidence in the form of the letter referred to by Ollestad on page 293 of his book and marked as Exhibit A for identification in the proceedings on motion for new trial.

The assertions, on pages 294–295, in the book as to the agreed "cover up" by F.B.I. Agents of investigation of the letter (page 293) and any possible perjury by an F.B.I. Agent, are not founded on any statements of F.B.I. Agents. When asked "Do you recall where you got it?", Ollestad stated:

"I believe it was either from the defendant, Mr. Byrnes, the—one of two defense attorneys, and I am trying to think if any Federal agents, other than F.B.I., but I can't recall where I got that information."

(Lines 3–6, page 2, Partial R. Tr., Exhibit A hereto.) He further testified relative to this point:

"Q Would it be correct to say then, Mr. Ollestad, that you had no data for attributing an actual agreement to F.B.I. agents to cover up an investigation?

A It depends on what you mean by 'factual basis.'

THE COURT: He has testified he didn't hear anybody say it. He heard no F.B.I. agent nor any conversation with F.B.I. agents.

This is a conclusion of yours, isn't it?

THE WITNESS: That is correct.

THE COURT: It is a conclusion that you just got through saying you got either from Mr. Byrnes or his defense counsel or you might have heard it, you said, from some other agent, indicating a Treasury agent or somebody like that?

THE WITNESS: That is correct.

THE COURT: Not an F.B.I. agent?

THE WITNESS: That is correct.

THE COURT: Is that right?

THE WITNESS: That is right."

(Line 17, page 3, through line 11, page 4, Partial R. Tr., Exhibit A hereto.)

Considering all of the testimony of Mr. Ollestad from its various aspects, together with the other available evidence, it does not appear there are circumstances in this matter from which it might be properly concluded that the petitioner could make a showing that would justify the granting of a Writ of Error Coram Nobis.

With respect to relief sought by the petitioner under the provisions of Rule 35, Federal Rules of Criminal Procedure, to wit, correction of an illegal sentence, as stated by the Court in United States v. Morgan, 346 U.S. 502 at 506, 74 S.Ct. 247 at 250:

"Sentences subject to correction under that rule are those that the judgment of conviction did not authorize."

The rule would not be applicable to the case at bar.

The motion to dismiss petitioner's motion to vacate, set aside and void illegal sentence is granted and said petitioner's motion is hereby ordered dismissed.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as may be required by the Rules.

EXHIBIT A

UNITED STATES v. JEROME BYRNES No. 30763

TUESDAY,          October 24, 1967

NORMAN OLLESTAD

called as a witness and sworn, testified as follows:

\*     \*     \*     \*     \*     \*

QUESTIONING BY MR. UELMEN:

\*     \*     \*     \*     \*     \*

Q Now, referring to the statement that you quote on page 295,

"But after that slight skirmish they came to terms. They agreed to cover up the investigation of any possible perjury by one of their fellow F.B.I. agents because it would only have led to their own punishment by the Director, and as they knew so well, Hernstein was guilty anyway so they figured he might as well do his time in prison for attempting the bribe."

Did you hear an agreement of this nature attributed to any agent of the Federal Bureau of Investigation?

A Not at that time, no.

Q At any time?

A I did hear that there was no agreement but that this type of an arrangement was made. I believe I was asked the same thing yesterday, and I believe that—I don't believe that any F.—I got this from any conversations with any F.B.I. agents.

Q Do you recall where you got it?

A I believe it was either from the defendant, Mr. Byrnes, the—one of two defense attorneys, and I am trying to think if any Federal agents, other than F.B.I., but I can't recall where I got that information.

Q Were the people who gave you this information relating their conclusion or were they relating a factual occurrence, which they knew of, that an agreement had been reached to cover it up?

MR. BYRNES: Objection, your Honor. I don't know how the witness could possibly know that.

THE COURT: He wrote this.

MR. BYRNES: Counsel is asking the witness to pass on what was in other people's minds at the time.

THE COURT: He is asking what he understood.

THE WITNESS: I believe the information was that there was—there were a few machinations and—but I heard no conversation from anybody that said that he knew or he had heard there was an actual agreement or an agreement to cover up the investigation, only that there were machinations.

THE COURT: You mean—

THE WITNESS: In other words, the investigation, concerning the investigation of the letter and the investigation of the charge of perjury.

THE COURT: When you say "machinations", is that the word somebody used or is that your word?

THE WITNESS: No, that is not a word anybody used. It just describes— oh, for instance, the things that I believe I said yesterday, that with all the exemplars of Gilmore's handwriting the lab couldn't determine that—you know, like if it was a false letter or a phony signature the lab should have come in and said it was.

THE COURT: You are talking about what you said was the failure of the F.B.I., you felt, in making a complete investigation as to the letter?

THE WITNESS: Yes.

THE COURT: All right. Go ahead.

BY MR. UELMEN:

Q Would it be correct to say then, Mr. Ollestad, that you had no data for attributing an actual agreement to F.B.I. agents to cover up an investigation?

A It depends on what you mean by "factual basis".

THE COURT: He has testified he didn't hear anybody say it. He heard no F.B.I. agent nor any conversation with F.B.I. agents.

This is a conclusion of yours, isn't it?

THE WITNESS: That is correct.

THE COURT: It is a conclusion that you just got through saying you got either from Mr. Byrnes or his defense counsel or you might have heard it, you said, from some other agent, indicating a Treasury agent or somebody like that?

THE WITNESS: That is correct.

THE COURT: Not an F.B.I. agent?

THE WITNESS: That is correct.

THE COURT: Is that right?

THE WITNESS: That is right.

THE COURT: All right.

Now let's go to something else.

CERTIFICATE

I, Virginia K. Wright, hereby certify that I am a duly appointed, qualified and acting official court reporter of the United States District Court for the Central District of California.

I further certify that the foregoing 4 pages are a true and correct partial transcript of the testimony of NORMAN OLLESTAD in the above-entitled cause on Tuesday, October 24, 1967, and that said transcript is a true and correct transcription of my stenographic notes.

Dated at Los Angeles, California, this 6th day of November 1967.

(s) Virginia K. Wright
Virginia K. Wright
Official Reporter